Eusebio **BERNARD**, Plaintiff–Appellant,

v.

**UNITED STATES of America, Defendant–Appellee.**

Eusebio **BERNARD**, Plaintiff–Appellant,

v.

James **CLIFFORD**, Brian Fitzpatrick, a certain Unidentified Confidential Informant, and Unidentified Agents, Officers, Employees and Servants of the Drug Enforcement Administration, designated "John and Jane Doe numbered: 1 through 5," jointly and severally, all such defendants being employees of the Drug Enforcement Administration. Defendants–Appellees.

No. 1281, Docket 93–6283.

United States Court of Appeals, Second Circuit.

Argued March 14, 1994.

Decided May 25, 1994.

---

William Noland, New York City, of counsel, for Eusebio Bernard.

Judith L. Mogul, U.S. Attorney's Office, S.D. of N.Y., New York City, of counsel, for U.S.

Before: WALKER, McLAUGHLIN, and RONEY,* Circuit Judges.

RONEY, Senior Circuit Judge:

Plaintiff challenges the district court's grant of summary judgment in favor of the United States and a number of federal employees in this action brought under the Federal Tort Claims Act and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). He alleged he was wrongly arrested as being a seller of crack cocaine. Since the district court correctly held there was no substantial issue of fact as to whether the defendants were justified in arresting and charging Bernard, we affirm the summary judgment for defendants.

Construing the record in the light most favorable to the plaintiff, Eusebio Bernard ("Bernard"), the facts are as follows. On October 16, 1991, Bernard was arrested in connection with a "buy and bust" narcotics investigation. The Drug Enforcement Administration ("DEA") used a confidential informant ("CI") and a cooperating witness to purchase a quantity of crack cocaine from an individual (the "contact") in the area of 150th Street and Broadway in Washington Heights, New York. Although later determined to be wrongly identified, Bernard was arrested as being the contact, the seller of crack cocaine.

The CI had worked as a registered confidential informant with the DEA since 1975 and had participated in this particular "buy

---

* The Honorable Paul H. Roney, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

and bust" operation since July 1991. The cooperating witness had pled guilty to narcotics charges in an earlier stage of the operation and had agreed with the United States Attorney's Office to assist the DEA in apprehending her supplier. In exchange for her services, the prosecution agreed to submit a letter to the sentencing court seeking a reduction in the cooperating witness's sentence.

The meeting between the CI, the cooperating witness, and the contact was observed by an unidentified DEA agent ("Agent # 1") in one location, and DEA agents James Clifford and Brian Fitzpatrick in another location. When the CI and the cooperating witness met the contact, Agent # 1 contacted Agent Clifford by radio, gave him a description of the contact, and later notified him when the meeting had ended and the direction in which the contact proceeded.

Agent Clifford's view of the meeting had been obstructed, but as the contact left the meeting, Agent Clifford was able to identify him based upon the description provided by Agent # 1 and by comparing the time and location from which the contact emerged with the location of the meeting. Agent Clifford, however, was unable to continue surveillance of the contact after the contact crossed the street and conversed with a small group of men.

Shortly after Agent Clifford lost sight of the contact, two men approached the CI and cooperating witness. One of the men delivered a package to the cooperating witness, who then passed it over to the CI. The CI then signalled the surrounding DEA agents, who in turn arrested the two men later identified as Jose Cruz ("Cruz") and David Lirano ("Lirano"). The package delivered by Cruz and Lirano contained 46.1 grams of crack cocaine.

As the crowd gathered to view the arrest, the CI pointed out to Agent Clifford that the contact was still present at the scene. Agent Clifford recognized the man as being the same person whom Agent # 1 had described as the contact, and whom Agent Clifford subsequently identified based upon the description provided by Agent # 1.

The man thought to be the contact and a companion entered a grocery store where both men were detained by Agent Clifford and two New York City police officers. Bernard, who had been identified as the contact, was arrested after the CI confirmed his identity, and the second man was released. The cooperating witness, who was handcuffed and being questioned by an unidentified white male, then identified Bernard as the individual who had set up the delivery of the crack cocaine.

On October 17, 1991, Agent Clifford filed a criminal complaint against Bernard, Cruz and Lirano in federal district court. A week later, Bernard, Cruz and Lirano were formally presented with the federal charges against them, and on October 29, 1991, a grand jury indicted Bernard and his two co-defendants for violations of 21 U.S.C. § 812, 841(a)(1), (b)(1)(A), (b)(1)(B) and 18 U.S.C. § 2. Cruz and Lirano were also indicted for violating 21 U.S.C. § 846. Bernard, Cruz and Lirano were formally arraigned on those charges on November 11, 1991. All three defendants, who had been detained since their arrest, were denied bail.

Both at the time of his arrest and during his detention, Bernard and several other people, including his co-defendants, his attorney, and people present at the time of his arrest, asserted that Bernard was innocent. In light of these statements, the Assistant United States Attorney, Michael S. Sommer, and Agent Clifford arranged a photographic line-up containing eight photographs, including one of Bernard. Both the CI and the cooperating witness identified the photograph of Bernard as the person with whom they arranged to purchase approximately 50 grams of crack cocaine on October 16, 1991.

Bernard was detained a total of 109 days in the Metropolitan Correctional Center and the Otisville Federal Detention Center until January 31, 1992. He was released upon the entry of a *nolle prosequi* discontinuing the case.

After Bernard's administrative claim against the DEA was denied, he then brought two actions in district court. The first action was brought under the Federal Torts Claims Act against the United States

only for: (1) negligence, (2) false arrest, (3) malicious prosecution, and (4) abuse of process. The second action was a *Bivens* action brought against Agents Clifford, Fitzpatrick and various unnamed individuals, alleging their actions violated his Fourth Amendment right to be free from unreasonable search and seizure. The district court granted defendants' motions for summary judgment in both actions.

## I. Standard of review

■ Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 244, 106 S.Ct. 2505, 2508, 91 L.Ed.2d 202 (1986); *Eastman Machine Co. v. United States,* 841 F.2d 469, 473 (2d Cir. 1988). This Court conducts a *de novo* review of the district court's determination. *Sayers v. Rochester Tel. Corp.,* 7 F.3d 1091, 1094 (2d Cir.1993).

## II. FTCA claims

State law applies to an FTCA claim. The Government's liability under the FTCA is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1988). Because the acts or omissions at issue in this case—Bernard's arrest and subsequent detention—both occurred in New York, New York law applies to Bernard's claims under the FTCA.

### A. Negligence

Bernard's complaint against the United States seeks to recover damages for the breach of the alleged duty to protect him "against the unreasonable risk of being summarily arrested, detained, and denied his freedom of liberty ... when [the agents] collectively and wrongfully failed to accurately and properly verify and confirm plaintiff's identity."

■ Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution. *See Boose v. City of Rochester,* 71 A.D.2d 59, 421 N.Y.S.2d 740, 743 (4th Dept.1979); *see also Dirienzo v. United States,* 690 F.Supp. 1149, 1155 (D.Conn.1988) (construing New York law).

■ On appeal, Bernard attempts to distinguish *Boose* on the basis that it is limited to cases relying upon broad principles of negligence where Bernard's claim is "clearly detailed and particularized." The *Boose* decision does not merely criticize vague negligence claims, but bars all negligence claims arising out of allegedly improper identification procedures during an arrest. The decision limits claims for relief available to plaintiffs in Boose's position to false arrest and malicious prosecution. The district court properly denied Bernard's negligence claim.

### B. False arrest

■ To prove the elements of false arrest under New York law, plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *See Benjamin v. United States,* 554 F.Supp. 82, 85 (E.D.N.Y.1982). Only the last element is in dispute. Bernard challenges the district court's bases for its finding of probable cause, the existence of which is a complete defense to an action for false arrest. *Zanghi v. Incorporated Village of Old Brookville,* 752 F.2d 42, 45 (2d Cir.1985).

■ A finding of probable cause can be made based on the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1982). The Government concedes that Bernard was misidentified, but probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information. *Colon v. City of New York,* 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983). The district court correctly concluded that the agents had proba-

ble cause to arrest Bernard based on the DEA agents' observations at the scene and the CI's identification of the plaintiff. In Agent Clifford's declaration, he stated that Agent # 1 had a clear view of the meeting between the buyers and the contact, and conveyed a description of the contact to Agent Clifford. Agent Clifford himself observed the contact as he left the encounter with the buyers. After Cruz and Lirano were arrested, the CI, whom Agent Clifford understood to be a reliable informant with a proven track record, identified plaintiff to Agent Clifford. Agent Clifford confirmed that the identification was based on his own earlier observations of the contact.

Bernard does not argue with the court's conclusion that these facts would constitute probable cause for his arrest. Rather, he challenges the court's reliance upon Agent # 1's observations and the CI's identification for its finding of probable cause.

Bernard argues that it was improper for the court to consider Agent # 1's observations in the absence of a declaration or affidavit from that agent. Bernard asserts that without such evidence, "[t]he Court was not in a position to accurately gauge the correctness of Agent # 1's identification, nor his/her ability to clearly observe what was taking place...." This argument misses the mark. Assuming the information Agent Clifford relied upon was wrong, probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information. *Colon,* 468 N.Y.S.2d at 455–56, 455 N.E.2d at 1250. Thus, the determination of probable cause does not turn on whether Agent # 1's observations were accurate, but on whether Agent Clifford was reasonable in relying on those observations.

Agent Clifford was reasonable in relying on Agent # 1's observations, particularly where they corresponded with Agent Clifford's own observation. Agent Clifford's declaration establishes that he organized the "buy and bust operation; that "DEA surveillance teams had been positioned at various points in order to fully cover the corner where the transaction occurred; and that Agent # 1 "had an unobstructed view of the corner." According to his declaration, Agent Clifford was able to corroborate Agent # 1's observations with his own. Although Agent Clifford's view was obstructed, he was "frequently able to see the buyers as they moved around near the corner." Agent # 1 had told Agent Clifford what the contact looked like and when the contact left the buyers. Agent Clifford identified the man "from the description provided to [him] by Agent # 1, as well as from the timing and the spot from which [the man] emerged, which [Agent Clifford] knew to be at the location where the buyers were currently positioned."

Bernard also contends that the district court should not consider the CI's identification because there is a factual dispute as to whether the CI had an adequate opportunity to identify him. Bernard asserts there is a discrepancy between where the CI said he spotted Bernard on the street and where Bernard was just prior to his arrest. Bernard asserted in his declaration that "as I had concluded my business in the wire transfer establishment, I went to see the owner of a supermarket at the corner of 150th Street and Broadway who is a friend of mine." Bernard asserts that his statement conflicts with Agent # 1's statement that Bernard was "in the crowd" when the CI pointed him out to Agent Clifford.

The statements are not clearly in conflict. It is entirely possible if not probable that on his way to the supermarket, Bernard stood in or walked through the crowd that had gathered to watch the arrest. The fact that Bernard was detained by the DEA as soon as he entered the supermarket and taken outside to be identified is consistent with Agent Clifford's statement that he and the CI spotted Bernard before he entered the supermarket and pursued him inside the market where he was initially detained. Furthermore, at the supermarket, the CI confirmed his identification of Bernard on the street. Bernard raises no significant factual dispute.

Bernard also challenges the reliability of an identification made by the cooperating witness. Although the Government denies such an identification was made, we assume it was for summary judgment purposes. We need not address the reliability of this identi-

fication, however, because the record indicates the agents' surveillance and the CI's identification was sufficient to establish probable cause. The district court properly granted summary judgment in favor of the defendants on plaintiff's false arrest claim.

### C. *Malicious prosecution*

■ The elements of a malicious prosecution claim under New York law are: (1) the defendant commenced or continued a criminal proceeding against plaintiff, (2) the proceeding terminated in plaintiff's favor, (3) there was no probable cause for the criminal proceeding, and (4) the defendant initiated the criminal proceeding out of malice. *Collom v. Incorporated Village of Freeport*, 691 F.Supp. 637, 640 (E.D.N.Y.1988).

■ In New York, the fact that the Grand Jury returned an indictment against Bernard creates a presumption that his arrest and indictment were procured with probable cause. *Colon*, 468 N.Y.S.2d at 456, 455 N.Ed.2d at 1251 ("[T]he trial court may not weigh the evidence upon which the police acted ... after the indictment has issued."). To rebut this presumption, the plaintiff "must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.*, 468 N.Y.S.2d at 456, 455 N.E.2d at 1251. Because there is no evidence of bad faith on the part of the agents, Bernard's malicious prosecution claim against them cannot be maintained under New York law.

■ On appeal, Bernard claims that even if probable cause existed at the time of his arrest, several intervening facts should have triggered additional investigation into his claims of innocence. *See Boose*, 421 N.Y.S.2d at 748. The facts raised by Bernard, however, occurred after Bernard's indictment in October 1991. Once the grand jury indicted Bernard, control of the prosecution passed to the prosecutor and was no longer within the agent's authority. *See Dirienzo*, 690 F.Supp. at 1158. Because the FTCA does not authorize suits for intentional torts based upon the actions of Government prosecutors, plaintiff cannot support his malicious prosecution claim with facts that arose

after his indictment. Having reviewed all the statements, we hold that none of the allegations would vitiate probable cause for plaintiff's prosecution even if they occurred prior to Bernard's indictment.

In fact, the evidence that arose after Bernard's arrest bolstered the finding of probable cause. In response to further assertions from Bernard's two codefendants and his attorney of Bernard's innocence, the Assistant United States Attorney set up a photographic line up during which both the CI and the cooperating witness identified Bernard. Post-arrest judicial proceedings such as the filing of the criminal complaint against Bernard, his indictment by a grand jury, and his arraignment also support a finding of probable cause. *See Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 95, 335 N.E.2d 310, 315 *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).

### D. *Abuse of Process*

■ To prove abuse of process, plaintiff must show: (1) regularly issued process compelling the performance or forbearance of some prescribed act, (2) the person activating the process must have been motivated to do harm without economic or social excuse or justification, and (3) the person activating the process must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process. *See Hornstein v. Wolf*, 109 A.D.2d 129, 491 N.Y.S.2d 183, 187 (Dep't 1985), *aff'd*, 67 N.Y.2d 721, 499 N.Y.S.2d 938, 490 N.E.2d 857 (1986).

■ Bernard alleges that the alleged coercive conduct took place "during a series of meetings with both the prosecutor and the DEA agents...." after he was indicted. The FTCA authorizes suits for abuse of process based only on the actions of federal investigative or law enforcement officers, not on the actions of government prosecutors. *See Dirienzo*, 690 F.Supp. at 1158 n. 8 (prosecutor not a law enforcement officer for purposes of FTCA intentional tort provision). Once the grand jury indicted Bernard, control of the prosecution passed to the prosecutor and was no longer within the agents'

authority. *Id.* Bernard's claim for abuse of process was properly denied.

### III. *Bivens Claim*

Bernard claims the individual defendants violated his Fourth Amendment rights by arresting, detaining, and prosecuting him without probable cause. Bernard's *Bivens* claim is barred by the decision that there was probable cause for his arrest and prosecution. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Having decided the *Bivens* claim on the merits, we need not reach the alternative decision of the district court that the claim could be dismissed for lack of service of process.

**AFFIRMED.**