Marvel DUKES, Plaintiff,

v.

The CITY OF NEW YORK, a municipal entity, New York City Police Department, Officers: Detective Donald Gannon, Ronald Cota, David Nieves, Ronald Morgan, "John" Capelli, Thomas Roes, names unknown, Defendants.

No. 92 Civ. 7275 (PKL).

United States District Court,
S.D. New York.

March 7, 1995.

George E. Hairston, New York City (George E. Hairston, James I. Meyerson, of counsel), for plaintiff.

Corp. Counsel of City of New York, New York City (Katherine Winningham, Muriel Goode–Trufant, of counsel), for defendants.

## OPINION AND ORDER

LEISURE, District Judge:

This is an action brought by Marvel Dukes ("Dukes"), pursuant to 42 U.S.C. § 1983 ("§ 1983"), for false arrest and malicious prosecution in violation of plaintiff's constitutional rights. Plaintiff sues certain named police officers and the City of New York (the "City") in this action.[1] Defendants now move for summary judgment on the following grounds: (1) probable cause existed to support plaintiff's arrest; (2) plaintiff cannot prove that his prosecution was motivated by malice, ill will or spite; (3) plaintiff cannot plead or prove a violation of § 1983 on the basis of a failure to investigate; (4) detective Morgan is entitled to immunity; and (5) plaintiff cannot show municipal liability. For the reasons stated below, defendants' motion is granted.

## BACKGROUND

The facts important to the instant motion are largely undisputed and are also susceptible of a succinct summarization. On July 15, 1990, plaintiff attended a party at which a fight ensued. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendant Mem.") at 2. While trying to stop the altercation, Darryl Mecca ("Mecca") was shot in the head and later died from his wounds. *Id.* The party was videotaped by the host. *Id.* at 2.

The police investigating the incident canvassed the area and obtained a description of the shooter. Defendant Mem. at 3. Detective Ronald Morgan ("Morgan"), who was assigned to the case on the morning of July 16, 1990, brought Cory Haynes ("Haynes"), a witness to the shooting, to the police precinct. *Id.* at 4. While there, Haynes viewed the videotape and identified plaintiff as the shooter. *Id.* Morgan prepared a photo array, and on July 21, 1990, Haynes identified plaintiff, from the photo array, as the shooter. *Id.* at 5.

On July 27, 1990, Morgan brought plaintiff to the precinct. Defendant Mem. at 6. They arrived at approximately 1:00 p.m. *Id.* Plaintiff declined to give a statement to Morgan, other than to state that he had not killed Mecca. *Id.* At approximately 4:30 p.m., plaintiff appeared in a lineup, from which he was again identified by Haynes as the shooter. *Id.*

Plaintiff's parents arrived at the precinct some time in the afternoon of July 27, 1990, and plaintiff maintains that they were told by Morgan that, if they brought witnesses to the precinct, he would interview those witnesses. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff Mem.") at 6. Plaintiff further contends that when his parents returned with several witnesses, after the lineup had been conducted, Morgan refused to speak with the witnesses. *Id.*

On July 27, 1990, at 8:00 p.m., in the presence of Morgan, plaintiff made a statement to an Assistant District Attorney ("ADA"). Plaintiff Mem. at 6. He stated that he was innocent, that "Calvin" had killed Mecca, and he described the incident and named some witnesses to the shooting. *Id.* at 7. In addition, plaintiff confirmed that he was present at the party where the shooting occurred, that he was present at the altercation when Mecca was shot, that he stood directly in front of Mecca, that Mecca fell against him after being shot, that he had blood on his clothes, and that he fled the scene of the murder. Defendant Mem. at 8.

At approximately 9:00 p.m., plaintiff was formally charged with Mecca's death. Plaintiff Mem. at 7. Plaintiff was arraigned on July 28, 1990, and was later indicted for the murder of Mecca. Defendant Mem. at 8. Morgan closed the investigation on July 28, 1990. Plaintiff Mem. at 7. Other than testifying before the grand jury, at a pretrial hearing, and at trial, Morgan had no further involvement in the prosecution of plaintiff. Defendant Mem. at 8.

---

1. In a stipulation and order of partial dismissal, dated July 26, 1994, the instant action was discontinued and dismissed with prejudice as to Detective Donald Gannon, Ronald Cota, David Nieves, Eric Capelli and Thomas Roes, parties intended as police officers employed by the Police Department of the City of New York, and any other employee of the City of New York unless otherwise specifically named.

In June 1992, after being held in custody for about two years, plaintiff was acquitted of the murder of Mecca, and on October 5, 1992, plaintiff brought the instant action. *Id.*

## DISCUSSION

### I. *The Standard for Summary Judgment*

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Thornton v. Syracuse Sav. Bank,* 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552); *accord Irvin Indus., Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 245 (2d Cir.1992).

"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Id.; accord Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991); *see also Lang,* 949 F.2d at 580 ("In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party."); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991)

("Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.").

■ The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.,* 477 U.S. at 249, 106 S.Ct. at 2511.

■ The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once a motion for summary judgment properly is made, however, the burden then shifts to the nonmoving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)); *accord Brass v. American Film Technologies, Inc.,* 987 F.2d 142 (2d Cir.1993). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)), *cert.*

*denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (citations and quotation omitted); *see also Gnazzo v. G.D. Searle & Co.,* 973 F.2d 136, 138 (2d Cir.1992) (the court must "consider the record in the light most favorable to the non-movant. However, the non-movant may not rest upon the mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (quotation and citations omitted). The Court draws all reasonable inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. Di Mauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987).

## II. *False Arrest*

 The elements of a § 1983 action for false arrest are substantially the same as the elements of a false arrest claim under New York law. *See Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992). In New York, in order for a plaintiff to succeed on an action for false arrest, he must demonstrate that a defendant was acting under color of law and that: "1) a defendant intended to confine the plaintiff, 2) plaintiff was conscious of the confinement and did not consent to it, and 3) the confinement was not otherwise privileged." *Reid v. New York,* 736 F.Supp. 21, 24 (E.D.N.Y. 1990).[2] In the instant action, only the third element is in dispute.

 While an arrest without a warrant is presumed unlawful, the arresting officer can show legal justification by proving the arrest was based on probable cause. *Id.* In other words, defendants can defeat a constitutional claim for false arrest by demonstrating that there was probable cause for the

arrest. *See, e.g., Reid,* 736 F.Supp. at 24; *Alberts v. New York,* 549 F.Supp. 227, 231 (S.D.N.Y.1982). Probable cause exists where officers "have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). Whether an offense was committed is not an issue in contention in the instant motion. Thus, the first question for this Court to consider is whether Morgan had probable cause to believe that Dukes committed the offense.

### A. *Probable Cause*

 It should preliminarily be noted that the validity of an arrest does not depend upon an ultimate finding of guilt or innocence. *See Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Rather, the soundness of the arrest hinges on the existence of probable cause at the time the arrest was made. "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994) (citation omitted). Probable cause is evaluated under an objective standard. *See Lindsey v. Loughlin,* 616 F.Supp. 449, 451 (E.D.N.Y.1985).

 Defendants maintain that the arrest of Dukes was legally justified due to Haynes' eye-witness identification of Dukes as the person who shot Mecca. Plaintiff concedes that, without more, identification by a witness may provide the necessary justification for the arrest of a suspect. Plaintiff Mem. at 9. Plaintiff contends, however, that when all the facts and circumstances that were within the knowledge of Morgan at the time of his arrest of Dukes are considered, there was insufficient probable cause to make the arrest.

---

**2.** Damages may be awarded for false arrest only for the period from initial custody until arraignment. *See Hygh,* 961 F.2d at 366. In the instant action, that period consisted of about a day.

Subsequent damages resulting from continued incarceration are attributable only to the tort of malicious prosecution. *Id.*

Plaintiff proceeds to argue "that within two hours of the arrest, Detective Morgan was informed by Sydney Dukes, the father of Marvel Dukes, that he would bring witnesses to exonerate Marvel Dukes." Plaintiff Mem. at 10–11. Even if the "basis of the arrest could have dissipated" subsequent to the arrest, as plaintiff argues occurred,[3] such an occurrence does not eliminate the probable cause that existed at the time of the arrest. Plaintiff acknowledges both that he was taken into custody between 12:00 and 12:30 p.m. on July 27, 1990 and that, at that time, Morgan only had available to him Haynes' identification.[4] Moreover, plaintiff concedes that such information, without more, is sufficient to establish probable cause. Consequently, although plaintiff's dissipation argument will have to be considered with regard to his claim for malicious prosecution, it does not impact the probable cause that justified Morgan's arrest of Dukes.

### B. Conclusion

■■■ "[W]here there is no dispute as to the information the defendants had prior to the arrest, the issue of probable cause is for the court to decide as a matter of law." *Jenkins v. City of New York*, 91 Civ. 3539 (RLC), slip op. at 9, 1992 WL 147647 (S.D.N.Y. June 15, 1993). In-person identifications by a witness are sufficient to make out probable cause for arrest. *See, e.g., id.; Miloslavsky v. AES Engineering Soc'y, Inc.*, 808 F.Supp. 351, 355 (S.D.N.Y.1992), *aff'd*, 993 F.2d 1534 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993). This Court finds that probable cause existed for plaintiff's arrest. Consequently, no further inquiry into plaintiff's false arrest claim is necessary. Defendants' motion for summary judgment on plaintiff's claim for false arrest must be granted.

### III. Malicious Prosecution

■■■ Although section 1983 provides the federal claim, the elements of the underlying malicious prosecution tort are borrowed from state law. *See Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir.1994). The elements of a malicious prosecution claim under New York law are:

(1) the defendant commenced or continued a criminal proceeding against plaintiff, (2) the proceeding terminated in plaintiff's favor, (3) there was no probable cause for the criminal proceeding, and (4) the defendant initiated the criminal proceeding out of malice.

*Bernard v. U.S.*, 25 F.3d 98, 104 (2d Cir. 1994) (citations omitted). Only the third and fourth elements of the malicious prosecution cause of action are contested by defendants. *See* Defendant Mem. at 13.[5]

### A. Probable Cause

■■■ As with probable cause to arrest, probable cause to prosecute consists of "such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *Colon v. New York*, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250, 468 N.Y.S.2d 453, 455 (1983) (citations omitted); *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir.1994) (probable cause under New York law is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.") (citations omitted). This Court, having found that probable cause existed at the time of Dukes' arrest, must now consider plaintiff's contention that any probable cause that existed at the time of the arrest, dissipated soon thereafter. The Court notes that the burden falls on plaintiff to demonstrate such dissipation because the grand jury's indictment against Dukes creates a presumption that his arrest and indictment were procured with probable cause. *See Bernard*, 25 F.3d at 104. In fact, the presumption of probable cause created by

---

3. Plaintiff Mem. at 10.

4. Morgan had available to him both Haynes' identification from the videotape and Haynes' corroborating identification from the photo array.

5. All negligence claims arising out of allegedly improper identification procedures during an arrest are barred. *See Bernard*, 25 F.3d at 102. The claims of relief available to a plaintiff in Dukes' position are limited to false arrest and malicious prosecution. *Id.*

the indictment is so strong that it may only be overcome by evidence demonstrating that defendants engaged in fraud, perjury, the suppression of evidence beneficial to the accused, or other police conduct undertaken in bad faith. *See Bernard*, 25 F.3d at 104; *Simmons v. Chemung County Dep't of Social Services.*, 770 F.Supp. 795, 801 (W.D.N.Y.), *aff'd*, 948 F.2d 1276 (2d Cir.1991).

■ A finding of probable cause supporting an arrest defeats a malicious prosecution claim unless plaintiff can demonstrate that at some point subsequent to the arrest, additional facts came to light that negated probable cause. *See Oakley v. Rochester*, 71 A.D.2d 15, 421 N.Y.S.2d 472 (4th Dep't 1979), *aff'd*, 51 N.Y.2d 908, 415 N.E.2d 966, 434 N.Y.S.2d 977 (1980). The facts that plaintiff contends negate the existence of probable cause are that (1) Dukes' father informed Morgan that he would bring witnesses to exonerate Dukes, (2) Dukes' father did, in fact, bring witnesses to the precinct, (3) Morgan refused to speak with the witnesses, (4) the witnesses would have told Morgan that Calvin Preddi, and not Dukes, had shot Mecca, and (5) Dukes himself told the ADA that he had not shot Mecca but rather that "Calvin" had shot Mecca.

Plaintiff observes that where there is evidence that:

> the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith, the presumption of probable cause has been overcome.

*Maxwell v. New York*, 156 A.D.2d 28, 34, 554 N.Y.S.2d 502, 505 (1st Dep't 1990) (citations omitted). The Court notes, however, that there is no evidence of any such occurrence. Plaintiff then cites *Collom v. Incorporated Village of Freeport*, 691 F.Supp. 637, 640 (E.D.N.Y.1988) for the proposition that "where the evidence essential to a determination of probable cause is conflicting, the question of probable cause is ordinarily a jury question." Plaintiff Mem. at 12. The Court finds this argument equally unavailing because, in the instant action, the evidence essential to the determination of probable cause was not conflicting.

■ At neither the time of Dukes' arrest, nor at the time of his subsequent indictment, was Morgan in possession of sufficient conflicting evidence to negate probable cause. Rather, even if plaintiff's allegations are accepted as true, Morgan was told by both the murder suspect and his father that the suspect did not commit the murder for which he was later indicted. Such evidence is not sufficient to negate the probable cause resulting from the identification by an eyewitness. The existence of a "swearing contest" between plaintiff as to his innocence and an eye-witness as to the events "cannot of itself render the issue of probable cause a jury question." *Collom*, 691 F.Supp. at 639. Consequently, plaintiff's only claim that need be considered by this Court on the instant motion, is that Morgan maliciously prosecuted Dukes by not interviewing the witnesses allegedly brought to the precinct by Dukes' father.

Plaintiff contends that Morgan could not deliberately close his eyes to the exculpatory evidence brought to his attention by Dukes' father without vitiating whatever probable cause existed at the time of the arrest. Plaintiff maintains that a jury could find that Morgan simply walked away from exculpatory evidence that was offered to him. Plaintiff notes that courts have recognized a cause of action where "defendants deviated egregiously from accepted practices of investigation or otherwise engaged in conduct that 'shocks the conscience.'" *Simmons*, 770 F.Supp. at 801.

This Court finds plaintiff's arguments unavailing. As a preliminary matter, this Court finds that Morgan did not "deviate egregiously" from accepted practices of investigation. The Court notes that, after Dukes' arrest, in addition to the alleged production of witnesses by plaintiff's father, other events also transpired. Specifically, Haynes again identified plaintiff as the shooter, this time from a lineup, and in an interview with the ADA, plaintiff admitted to being at the scene of the murder, being involved in the fight leading to the shooting, standing directly in

front of the victim, having his clothing bloodied as a result of the shooting, and fleeing from the scene of the murder.

■ Plaintiff submits in support of his opposition to the instant motion unsworn statements of purported witnesses to the murder which corroborate plaintiff's account of what transpired. Plaintiff contends that some of the these witnesses were also produced by his father soon after he was taken into custody, and that if Morgan had interviewed them, they would have rendered their account at that time. The Court first notes that unsworn statements are not admissible to controvert a summary judgment motion. *See, e.g., Naantaanbuu v. Abernathy,* 816 F.Supp. 218, 228–29 (S.D.N.Y.1993); *Cotter v. Helmer,* 88 Civ. 5710 (PKL), slip op., 1990 WL 103980 at *8 n. 4 (S.D.N.Y. July 17, 1990). The Court further notes that defendants noticed and subpoenaed the depositions of witnesses identified by plaintiff as having personal knowledge relevant to this action, and these witnesses refused to comply with the subpoenas. *See* Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment ("Defendant Reply") at 5. Plaintiff now attempts to use unsworn statements for their truth where defendants have had no opportunity to depose or to cross-examine the declarants as to the statements contained in their declarations. Defendant Reply at 5–6.

Plaintiff also relies on the previous testimony, at his criminal trial, of Ruben Espino. Plaintiff, however, has not established a foundation for admitting these hearsay statements under the exception created in Fed. R.Evid. 804(b)(1) by showing that (a) the declarant is unavailable; (b) the testimony was given at "another hearing of the same or a different proceeding;" and (c) "the party against whom the testimony is now offered ... had an opportunity *and similar motive* to develop the testimony by direct, cross, or redirect examination." Fed.R.Evid. 804(b)(1) (emphasis added). It is not at all obvious to this Court that defendants would have attempted to ascertain at Dukes' criminal trial

whether Ruben Espino, or any other witness, was available for interview by the police at the scene of the murder or on the day of plaintiff's arrest or what precisely they would have said at such an interview.[6]

This Court, however, need not exclude the evidence provided by plaintiff to reach the conclusion that defendants' motion for summary judgment on plaintiff's claim for malicious prosecution must be granted. Even accepting such evidence as true, this Court finds that the prosecution of Dukes was still supported by probable cause. Plaintiff has adduced no evidence of fraud, perjury, or the misrepresentation or falsification of evidence sufficient to rebut the presumption of probable cause which flows from plaintiff's indictment by the grand jury. *See Oakley* 421 N.Y.S.2d at 474. Rather, plaintiff merely claims that Morgan failed to interview witnesses and to discover additional evidence.

■ "[T]he mere assertion of an alibi, and even the failure to investigate such an alibi to plaintiff's satisfaction, does not overcome the existence of probable cause to prosecute ..." where there is no evidence of fraud or suppression of evidence. *Gisondi v. Town of Harrison,* 120 A.D.2d 48, 53, 507 N.Y.S.2d 419, 423 (2d Dep't 1986), *aff'd,* 72 N.Y.2d 280, 528 N.E.2d 157, 532 N.Y.S.2d 234 (1988) (citations omitted). Morgan was not required to conduct an investigation that focused where plaintiff and his parents chose. "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury." *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989). Police officers need not conduct an investigation which exculpates an arrestee. *See Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979). "To hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me'." *Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir.1988).

### B. *Actual Malice*

■ Having found that there was probable cause for the criminal proceeding

---

6. This Court is not impressed by plaintiff's claim that the fact that the witnesses allegedly brought to the precinct by Dukes' father would have

testified to Dukes' innocence is clear from the fact that they went to the precinct. *See* Plaintiff Mem. at 11.

against Dukes, this Court need not reach the issue of whether defendants initiated the criminal proceeding out of malice.[7] The Court merely notes that it finds unpersuasive plaintiff's claim that actual malice can be inferred from Morgan's refusal to interview the witnesses produced by his father in the hours following his arrest. In fact, plaintiff's position rests on little more than the proposition that a jury could infer the existence of actual malice from the absence of probable cause. *See* Plaintiff Mem. at 5. This argument necessarily fails because, in the instant case, probable cause for both plaintiff's arrest and prosecution existed as a matter of law.

### IV. *Qualified Immunity*

■■■■■ This Court, having concluded that probable cause existed for both plaintiff's arrest and subsequent prosecution and that defendants' prosecution of Dukes did not stem from malice, need not reach the issue of qualified immunity. Nevertheless, the Court briefly notes that police officers enjoy a qualified immunity from damage suits arising out of their official conduct. *See Anderson v. Creighton*, 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987). "The relevant question ... is whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information the ... officers possessed." *Id.* at 641, 107 S.Ct. at 3040. The defense of qualified immunity is established when (1) at the time defendants acted, it was unclear whether plaintiff's asserted interests were protected by federal law, or (2) defendants could have reasonably believed that their actions did not contravene an established federal right. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 531–32 (2d Cir.1993); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir.1988). This Court finds that it was objectively reasonable for Morgan to have believed both that probable cause existed and that his actions did not contravene an established federal right. Consequently,

Morgan is immune from liability under § 1983 on grounds of qualified immunity.

### V. *Claim Against the City of New York*

■■■■■ In order to state a claim of municipal liability under § 1983, plaintiff must plead and prove that (1) a person acting under color of state law committed acts (2) that deprived plaintiff of a right, privilege or immunity guaranteed by federal law. *See Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In the instant case, where no constitutional violations have occurred and Morgan's actions were deemed proper, the municipality cannot be found liable. *See Doe v. Smith*, 704 F.Supp. 1177, 1188 (S.D.N.Y.1988); *Hahn v. County of Otsego*, 820 F.Supp. 54, 59 (N.D.N.Y.1993). In addition, plaintiff has adduced no evidence in support of his claim that New York City has a policy which permits its officers recklessly to conduct homicide investigations or that such policy has a disparate impact on African Americans. Accordingly, plaintiff's claim of municipal liability should be dismissed.

### CONCLUSION

For the reasons stated above, defendants' motion for summary judgment dismissing this action is granted, and this action is dismissed in its entirety.

**SO ORDERED.**

---

**7.** Showing malice under New York law in this context means that defendants must have commenced the criminal proceeding due to a wrong or improper motive, something other than a decision to see the ends of justice served. *See Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994).