**Lloyd BROWN, Jr., Plaintiff,**

v.

**THE CITY OF NEW YORK, Detective Bavolar, Bronx County District Attorney, Assistant District Attorneys Gregg Turkin and Mary D'Andrea, Defendants.**

**No. 01 Civ. 5782(VM).**

United States District Court, S.D. New York.

March 4, 2004.

---

474

---

**DECISION AND ORDER**

MARRERO, District Judge.

## I. *BACKGROUND*

Plaintiff Lloyd Brown, Jr. ("Brown") brought this action naming as defendants the City of New York (the "City") and several City police officers, as well as the Bronx County District Attorney and several Assistant District Attorneys (the "DA Defendants"). Invoking 42 U.S.C. §§ 1983, 1985 and 1986, Brown alleges violations of his constitutional rights, as well as various common law torts, all arising from his arrest by City police officers and related prosecution in 1998. Brown subsequently withdrew his claims against the DA Defendants. The City then filed the instant motion for summary judgment.

By Order dated February 25, 2004, the Court granted the City's motion and indicated that the Court's findings, reasoning and conclusions would be set forth in a Decision and Order to be separately issued. Accordingly, for the reasons discussed below, the City's motion for summary judgment is GRANTED.

## II. *FACTS*

As a threshold matter, the Court notes that, as detailed in its February 25, 2004 Order, Brown did not respond to the City's motion, even after receiving two extensions and notice from the City, prior to the City's filing of the fully-briefed motion, that the deadline for Brown's response had passed. The Court accordingly proceeded to consider the motion on the basis of the record before it. Given the absence of a response, the Court treats the facts set forth in the City's Rule 56.1 Statement of Undisputed Material Facts as "deemed to be admitted." S.D.N.Y. Loc.R. 56.1(c). The Court also considers other documents filed in connection with the motion as unopposed and accepts them, along with the allegations in the complaint, as appropriate, as forming the factual basis for the motion. *See Mercado v. Div. of New York State Police,* No. 96 Civ. 235, 2001 WL 563741 (S.D.N.Y. May 24, 2001); *RTC Mortgage Trust 1995 S/Nl v. Polmar Real-*

*ty, Inc.,* No. 91 Civ. 6685, 1996 WL 689281, at *1 n. 1 (S.D.N.Y. Nov.27, 1996).

Brown's claims arise from his arrest and prosecution in connection with a homicide committed in the Bronx on July 3, 1998. On that day, Elroy Evans ("Evans") was sitting with the victim, Dale Smith ("Smith"), on the steps of Smith's house in the Bronx. At approximately 5:35 p.m., two armed men arrived and forced them inside at gunpoint. Smith struggled with one of the gunmen, who shot Smith. Two other individuals apparently connected with the attackers then arrived in a vehicle and the four men fled. Evans gave the police a description of the shooter as a male black, Jamaican, about six feet tall and 25 to 30 years old.

On the day of the shooting and on several later occasions Evans reviewed photographs at the 47th Precinct as part of the police investigation of the crime. On the second visit, Evans identified the photograph of an individual he said was the accomplice who first appeared with the shooter and had held Evans at gunpoint. At a subsequent line-up that included the person he had so identified, Evans was unable to pick out anyone positively. According to Brown, after the line-up, Detective Bavolar ("Bavolar"), the police officer in charge of the investigation and the one individual police officer specifically named as a defendant in the complaint, and other unidentified police officers not individually named in the complaint, allegedly instructed Evans to identify someone as the offender and threatened to charge Evans with the crime if he failed to do so. While reviewing more photographs two weeks later, Evans identified a picture of Brown as the person who had shot Smith. Brown, who had been arrested a week earlier on an unrelated armed robbery charge, substantially fit the description of the shooter Evans had given to the police on the day of the homicide.

On August 23, 1998, Bavolar and other City police officers visited Brown at his home in Queens, New York. They informed Brown that they were conducting an investigation of a crime in the Bronx and requested that Brown accompany them to the 47th Precinct. On the way there and at the precinct, Brown allegedly gave conflicting or evasive statements about his familiarity with or prior presence in the Bronx. Similarly, he gave different accounts of his whereabouts on the date and time Smith was killed, telling Bavolar that he was at home watching television, that he was at the Green Acres shopping mall in New York with his father, mother and other relatives, and that he was at a mall in New Jersey with his mother and brother-in-law. At a line-up later that day, Evans identified Brown as the individual who killed Smith. Brown was then informed by Bavolar that he was being arrested and charged with second degree murder, attempted robbery, and criminal use of a firearm in connection with Smith's shooting. On August 24, 1998, Brown was arraigned on these charges and remanded without bail.

Appearing before a grand jury on September 9, 1998, Evans described the events relating to the shooting of Smith. He testified that he saw the shooter, whom he described as speaking with a Jamaican accent, and that he had identified the person during a line-up on August 23, 1998. Brown's father told the grand jury that on the afternoon of the homicide Brown was with him and other relatives at the Green Acres mall, that they returned home between 5:00 and 5:30 p.m. and that, while the father stayed home with his granddaughter, Brown and the other family members went out again and returned at approximately 9:15 p.m. The grand jury, after deciding not to hear testimony from other alibi witnesses Brown had proffered, indicted Brown of second degree murder

and other related crimes. Brown moved to dismiss the indictment, and a judge of the New York State Supreme Court, Bronx County, denied the motion, finding that there was sufficient evidence to support each element of the offenses charged.

On March 29, 2000, the Bronx District Attorney advised the state court that it had decided to recommend dismissal of the charges against Brown, who was then released on parole. Three weeks later, at the adjourned date for the proceeding, the court dismissed the case against Brown.

## III. *DISCUSSION*

### A. *STANDARD FOR SUMMARY JUDGMENT*

The Court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must first look to the substantive law of the action to determine which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that the evidence contained in the record fails to raise a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a showing, the non-moving party must respond with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To this end, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence

showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). Thus, the moving party "must prevail if the [non-movant] fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir.1996) (citing *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505).

Here, as described above, Brown filed no timely opposition to the instant motion. The Court thus proceeds to consider the motion as unopposed and not raising genuine disputed issues as to the material facts. *See United States Liab. Ins. Co. v. P. Mahoney Contracting Corp.*, No. 95 Civ. 9108, 1998 WL 895750, at *1 (S.D.N.Y. Dec.21, 1998); *In re Towers Fin. Corp. Noteholders Litig.*, 996 F.Supp. 266, 275 (S.D.N.Y.1998).

### B. *FEDERAL CLAIMS*

#### 1. *Section 1983 Claims*

█ Brown's complaint asserts a claim pursuant to U.S.C. § 1983 against the City of New York. To prevail upon such a claim, Brown must demonstrate that the harm he alleges as a deprivation of a constitutional right resulted from a specific municipal policy, practice or custom, and not an isolated instance of unlawful conduct by local public employees. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992); *see also City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

█ Brown's complaint describes in general, conclusory terms that the City negligently hired, trained and supervised its police officers, and failed to investigate

their backgrounds. Beyond the broad allegations of his pleadings, Brown presents no evidentiary support for the existence of such a municipal policy, custom or practice, nor any indication of how any such City conduct resulted in the harms Brown suffered in connection with his arrest and prosecution. The existence of a municipal policy or practice entailing deprivations of constitutional rights cannot be grounded solely on the conclusory assertions of the plaintiff. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Absent such sufficient evidence, Brown's § 1983 claim must be dismissed. *See Curry v. City of Syracuse* 316 F.3d 324, 329–30 (2d Cir.2003).

### 2. *Section 1985 and § 1986 Claims*

Brown also asserts claims pursuant to 42 U.S.C. §§ 1985 and 1986 alleging that the individual police officers conspired to interfere with his civil rights and that all of the defendants failed to prevent the conspiracy.

As in the case of a claim under § 1983, there can be no liability against the City under § 1985 absent a municipal policy, custom or practice. *See Owens v. Haas,* 601 F.2d 1242, 1247 (2d Cir.1979); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (E.D.N.Y.2003); *Philippeaux v. North Central Bronx Hosp.,* 871 F.Supp. 640, 657 (S.D.N.Y.1994). A claim under § 1986 must be predicated on a valid § 1985 claim. *See Brown v. City of Oneonta,* 221 F.3d 329, 341 (2d Cir.2000). Brown has failed to produce any evidence demonstrating the existence of such a City policy and the record contains no other support for Brown's conspiracy claim against the City or any individual police officer in this regard. First, as the City points out, Brown's complaint specifically names only one police officer, Bavolar, and there is no record that he was served with process in this action. Brown has neither served nor specifically identified any other officer who may have conspired with Bavolar. Furthermore, Brown has produced no evidence to substantiate the allegation in his complaint that Bavolar and several other officers threatened Evans to identify an individual in a line-up or face prosecution for Smith's death. Bavolar cannot have engaged in a conspiracy involving only himself, and Brown has failed to put forward any evidence that any other officers acted in concert with Bavolar. *See* 42 U.S.C. § 1985(3) (providing cause of action "[i]f *two or more persons* ... conspire ... for the purpose of depriving [the plaintiff] of the equal protection of the laws") (emphasis added); *Heinfling v. Colapinto,* 946 F.Supp. 260, 267 (S.D.N.Y.1996). Moreover, a fair reading of the complaint and events surrounding Brown's arrest and prosecution cannot support any reasonable inference that the treatment Brown received relating to his arrest and prosecution was in any way motivated by unlawful discrimination within the ambit of §§ 1985 and 1986. For these reasons, Brown's claims under these provision must be dismissed.

### C. *STATE LAW CLAIMS*

The City requests the Court, absent any remaining federal questions at issue, to decline to exercise supplemental jurisdiction over Brown's common law claims. In considering this request, the Court notes that the events underlying this action occurred in 1998 and that this case was commenced in 2001. Thus, the effect of declining to adjudicate the common law causes of action here would be to preclude their resolution on the merits in state court because the claims are likely to be time-barred. However, if the Court were to dismiss state claims without prejudice, the result would be to burden the state courts, and the parties, with continuing litigation of issues that, in the final analy-

sis, on this Court's review of the record, are unfounded. Accordingly, the Court proceeds to review the substance of Brown's state law claims on the merits.

### 1. False Arrest

■ Brown alleges that his arrest on the charges stemming from the killing of Smith was unlawful. This Court disagrees. To establish a false arrest claim under New York law, a plaintiff must demonstrate that he was intentionally confined by the defendant without his consent and without justification. *See, e.g., Broughton v. State,* 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, 313–14 (1975), *cert. denied sub nom Schanbarger v. Kellogg,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)); *Broughton,* 373 N.Y.S.2d 87, 335 N.E.2d at 315. The probable cause needed to arrest a suspect is a far lower standard than the beyond a reasonable doubt standard necessary to convict a defendant at trial. Thus, the eventual dismissal of the charges against Brown, does not in itself establish an absence of probable cause to arrest him. *See Coyle v. Coyle,* 302 F.Supp.2d 3, 6–7, at *3 (E.D.N.Y. Feb.9, 2004).

■ As a general matter probable cause exists when the arresting officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant,* 101 F.3d at 852 (citing *Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). The burden of establishing absence of probable cause is on the plaintiff. *See id.* But whether or not prob-

able cause existed "may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Id.* (citing *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118–19 (2d Cir.1995)).

■ Here, the facts and totality of circumstances on the record amply demonstrate the existence of probable cause at the time Bavolar arrested Brown, who had recently been arrested in connection with another armed robbery. Evans's eyewitness account of the crime constituted reasonably trustworthy information. On the day of the killing Evans gave Bavolar a description of the shooter, not long thereafter picked out a photograph of Brown and later pointed him out at a line-up. The description Evans had given to Bavolar substantially matched Brown's physical traits. Moreover, the significant inconsistencies in Brown's account of his whereabouts on the date of the crime and of his knowledge of and previous presence in the Bronx could have further reinforced a finding of probable cause by the arresting officers. Viewed as a whole, these circumstances were sufficient to warrant a person of reasonable caution to believe that Brown had committed the offense for which he was arrested. *See id.*

### 2. Malicious Prosecution

■ Brown's malicious prosecution cause of action must fail because, like the false arrest claim, it rests upon an absence of probable cause for commencing the proceeding as one of the essential elements of the cause of action under New York law. *See Colon v. City of New York,* 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248, 1250 (1983); *see also Jocks v. Tavernier,* 316 F.3d 128, 136 (2d Cir.2003) (citing *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir.1997)). "Once a suspect has been indicted ... the law holds that the Grand

Jury action creates a presumption of probable cause." *Colon,* 468 N.Y.S.2d 453, 455 N.E.2d at 1250 (citations omitted); *Marshall v. Sullivan,* 105 F.3d 47, 54 (2d Cir. 1996). This presumption may be overcome by sufficient evidence demonstrating that the police witnesses who appeared before the grand jury or the District Attorney misrepresented, falsified or suppressed evidence or otherwise procured the indictment by fraudulent conduct or bad faith. *See Colon,* 468 N.Y.S.2d 453, 455 N.E.2d at 1250–51 (citations omitted).

■ There is no evidence on this record to support a finding of absence of probable cause for the indictment or of police misconduct sufficient to overcome the presumption that the grand jury's indictment of Brown was warranted. On Brown's challenge, his indictment was reviewed by a State Supreme Court judge and found to be grounded on sufficient evidence to support the charges. That the District Attorney subsequently decided to recommend dismissal of the charges does not overcome the presumption that probable cause existed for Brown's arrest. *See id.* Brown's assertion that Bavolar did not inform the grand jury that at the first line-up Evans was unable to identify the second offender does not, given the other evidence and other circumstances on the record, constitute sufficient showing of fraud, perjury or bad faith misconduct by the police to overcome the presumption of probable cause. *See People v. Mitchell,* 82 N.Y.2d 509, 605 N.Y.S.2d 655, 626 N.E.2d 630, 633 (1993) ("[T]he People maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused.") (citing *People v. Lancaster,* 69 N.Y.2d 20, 511 N.Y.S.2d 559, 503 N.E.2d 990 (1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1383, 94 L.Ed.2d 697 (1987)). Nor is Brown's allegation of Bavolar's coercive threat to Evans to iden-

tify a perpetrator substantiated by any admissible, non-hearsay evidence of a reliable witness.

In any event, the record contains no evidence which would sustain other essential elements of a malicious prosecution claim: that any police misconduct in prosecuting Brown was intentional and motivated by actual malice. *See Colon,* 468 N.Y.S.2d 453, 455 N.E.2d at 1250; *see also Jocks,* 316 F.3d at 136.

### 3. *Abuse of Process*

For much the same reasons that sustain the dismissal of Brown's false arrest and malicious prosecution claims, there is no evidentiary basis on the record to sustain a sufficient finding that the actions of the City or any individual defendant satisfy the elements of a claim of abuse of process. *See Bernard,* 25 F.3d at 104.

■ The elements of that cause of action require a demonstration of conduct by the defendant motivated by desire to do harm without justification and "some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process." *Id.* These prerequisites are very much akin to the absence of probable cause and intentional misconduct and malice elements that govern the malicious prosecution cause of action. No facts here point to any improper motive or collateral advantage sought by Bavolar or any of the named defendants for undertaking the arrest or prosecution of Brown. Thus, for much the same reasons that sustain the dismissal of Brown's false arrest and false prosecution claims, his abuse of process cause of action fails.

### 4. *Libel and Slander*

The Court finds nothing in Brown's complaint setting forth any specific statements attributable to any of the named defendants that constitutes defamation under

state law. *See Liberman v. Gelstein,* 80 N.Y.2d 429, 590 N.Y.S.2d 857, 605 N.E.2d 344, 347 (1992); *see also Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (1993).

### 5. *Intentional Infliction of Emotional Distress*

■ To establish a cause of action for intentional infliction of emotional distress under New York law Brown must demonstrate wrongful conduct on the part of the City that was "intentionally or recklessly" calculated to cause him emotional distress. *Fischer v. Maloney,* 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215, 1217 (1978). The misconduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, cmt (d).

■ Under the facts presented here, given the finding above that the City police officers had probable cause to arrest and prosecute Brown on the charges at issue, the Court concludes that the record lacks any evidence even remotely satisfying this rigorous threshold and upon which a rational factfinder could find liability. Accordingly, the Court dismisses Brown's claim of intentional infliction of emotional distress.

### 6. *Conspiracy*

In ruling on Brown's federal claims above the Court found no sufficient basis to sustain a claim of conspiracy. There is similarly no evidence to establish the essential elements of common law conspiracy. *See Kashi v. Gratsos,* 790 F.2d 1050, 1055 (2d Cir.1986).

### 7. *Other Claims*

The Court has examined Brown's other claims of negligent law enforcement and violations of provisions of the New York State Constitution, and considered any residual causes of action suggested by the pleadings. The Court finds no grounds to support viable claims under any cognizable theories. *See Bernard,* 25 F.3d at 102 (no right of recovery under general negligence principles for a claim alleging that law enforcement officers failed to exercise due care in carrying out an arrest or initiating a prosecution); *Coakley v. Jaffe,* 49 F.Supp.2d 615, 628 (S.D.N.Y.1999) (no private right of action under the New York Constitution for claims that are remediable under other state laws or federal law pursuant to 42 U.S.C. § 1983). Accordingly, the Court dismisses Brown's remaining state law claims.

### *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the Court's Order dated February 25, 2004 ruling on the motion for summary judgment of defendant City of New York (the "City") is amended to incorporate the discussion and considerations set forth above; and it is further

**ORDERED** that the motion of the City of New York is granted in its entirety and the complaint of plaintiff Lloyd Brown, Jr. is dismissed.

The Clerk of Court is directed to close this case.

**SO ORDERED.**