**UNITED STATES of America**

v.

**Ronald RIVERA, Defendant.**

**No. 90 Cr. 453 (CSH).**

United States District Court,
S.D. New York.

Oct. 23, 1990.

Otto G. Obermaier, U.S. Atty., New York City by Gaines H. Cleveland, for U.S.

J. Bruce Maffeo, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

On April 26, 1990 defendant Ronald Rivera was arrested pursuant to an arrest warrant issued on April 4, 1990 and charged with one count of violating 18 U.S.C. §§ 2113(d) and 2 in connection with the armed robbery of the Manufacturer's Hanover Trust Company, 230 Second Avenue, New York, New York on October 18, 1989.

Defendant moves to suppress an inculpatory written statement he signed on the day after his arrest. Rivera contends that the affidavit in support of the arrest warrant was flawed; that the arrest violated his Sixth Amendment right to counsel; and that the statement was obtained during an impermissible delay before presentment to the magistrate.

Because the defendant's presentment before the magistrate was unreasonably delayed, the defendant's motion to suppress is granted.

I.

## BACKGROUND

On April 4, 1990 Special Agent Henry Congregane of the Federal Bureau of Investigation (F.B.I.) swore to a Complaint before Magistrate Naomi Reice Buchwald asking for an arrest warrant and alleging that defendant Ronald Rivera had violated 18 U.S.C. § 2113(d) by the armed robbery of the Manufacturer's Hanover Trust Company located at 230 Second Avenue, New York, New York ("Manufacturer's Hanover"). Agent Congregane is a member of the Joint Bank Robbery Task Force ("J.B. R.T.F.") which is a combined F.B.I. and New York City Police Department task force which investigates armed bank robberies in New York City. Agent Congregane recounted that on or about October 18, 1989 two men, one black and one Hispanic, robbed Manufacturer's Hanover. The Hispanic robber was described by witnesses as about 5'8″ tall, approximately 120 to 130 pounds, about 20 to 23 years old and having a light complexion and a mustache. Members of the J.B.R.T.F. reported that there were four surveillance photographs of the bank robbers and these photographs showed a black male and a shorter Hispan-

ic male leaving the bank. Complaint ¶¶ 1–3.

Agent Congregane reported that an individual named Roosevelt Hendrix had been arrested on federal bank robbery charges and had signed a written statement admitting the Manufacturer's Hanover robbery and stating that his accomplice was the defendant Ronald Rivera. Complaint ¶¶ 4–5. Other members of the J.B.R.T.F. reported that the Hispanic male in the surveillance photographs "appears to resemble the defendant." Complaint ¶ 6. Agent Congregane reported that another defendant had admitted committing "other bank robberies" with the defendant. Complaint ¶ 7. The Complaint was signed and a warrant issued for the defendant's arrest.

The arrest warrant was executed on the defendant on April 26, 1990 when Detective Gerald M. Clarke of the New York City Police Department and Special Agent E. Michael Dressler of the F.B.I., two members of the J.B.R.T.F., arrested the defendant after he was released to them by the New York City Corrections Department. Affidavit of Detective Gerald M. Clarke ¶ 4 ("Clarke Aff."). The defendant had just been sentenced to six months incarceration in an unrelated state robbery case. Affidavit of J. Bruce Maffeo, Esq. ¶ 6 ("Maffeo Aff."). Although detectives had been at the courthouse for much of the afternoon, the defendant was not released to the J.B.R.T.F. members until 7:30 p.m. At that point the J.B.R.T.F. members placed the defendant under arrest but they did not question him. Clarke Aff. ¶ 4. Detective Clarke states that he "knew that the federal magistrate's court was closed for the evening," so he and Agent Dressler took the defendant to the Metropolitan Correctional Center ("M.C.C.") to spend the night. Clarke Aff. ¶ 5. At the M.C.C. the defendant requested special security because he thought he recognized certain inmates as being involved in the killing of his brother. Neither Detective Clarke nor Agent Dressler questioned the defendant about the charges pending against him. Clarke Aff. ¶¶ 6–7.

On the morning of April 27, 1990 the defendant was taken from the M.C.C. to the F.B.I. offices at 26 Federal Plaza for processing before arraignment. Special Agent Mary Galligan, who along with Detective Patricia Carter took custody of the defendant, reports that while she arrived at the M.C.C. to pick up the defendant at 8:40 a.m., he was not available until 10:00 a.m. because of special security measures taken for the defendant. Affidavit of Special Agent Mary E. Galligan ¶ 3 ("Galligan Aff."). Counsel for the defendant states that at the defendant's arraignment later in the day, the government represented that the defendant had been picked up at 8:30 a.m. Maffeo Aff. ¶ 9. For the purposes of this motion, I will view the facts in the light most favorable to the government and assume the defendant was released at 10:00 a.m. Agent Galligan and Detective Carter took the defendant to F.B.I. offices at 26 Federal Plaza for processing which include fingerprinting and photographing the defendant, and taking his background history. Galligan Aff. ¶ 5. During transit, Agent Galligan reports that the defendant made certain inculpatory statements about his involvement in bank robberies. Galligan Aff. ¶ 6.

At 26 Federal Plaza the defendant was processed for about 65 minutes. At 11:20 a.m., after Rivera was processed, Detective Galligan read the defendant his rights and the defendant signed a written waiver form waiving those rights. Galligan Aff. ¶ 7. After waiving his rights defendant was given coffee and also a chance to call his mother. Agent Galligan and a Detective Ernest Bostic then interviewed the defendant for about 30 minutes and prepared a written statement for Rivera based on this interview. The defendant then reviewed and corrected the statement and signed it, all of which took approximately 40 minutes. Galligan Aff. ¶¶ 9–10. The defendant's statement admitted involvement in three robberies, including that of Manufacturer's Hanover. Maffeo Aff., Exhibit E. Agent Galligan and Detective Bostic then took the defendant to the United States Courthouse to be presented. The defendant arrived at the courthouse at about 1:00 p.m. The

processing procedures of the Pretrial Services Agency and the Marshals Service took until approximately 3:00 p.m. After consulting with an attorney at 3:20 p.m., the defendant was presented before the magistrate at about 4:15 p.m. Galligan Aff. ¶¶ 11–15.

Defendant has moved to suppress the incriminating statement signed on the afternoon of April 27, 1990. Defendant's counsel contends that the arrest warrant for the defendant was based on an affidavit that omitted critical facts and so the arrest was illegal and any statements taken after it are inadmissible. Counsel avers that Hendrix initially claimed that he had committed the Manufacturer's Hanover robbery alone and admitted that he had a history of substance abuse. Maffeo Aff. ¶ 5. Counsel also argues that the defendant's arrest immediately after the conclusion of his state court proceedings evidences a government attempt to circumvent the defendant's appointed counsel in his state case. Counsel contends that the delay between the defendant's arrest at 7:30 p.m. and his arraignment at 4:15 p.m. the following day was an unacceptable delay before presenting the defendant for arraignment. Maffeo Aff. ¶ 11.

### DISCUSSION

#### II.

As an initial question, I must determine whether the arrest warrant in this case is subject to the same analysis as a search warrant would be. Defendant argues that the holding in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), where a search warrant was held invalid because of misrepresentations in the supporting affidavit, requires the invalidation of an arrest warrant if it is based on an affidavit containing misstatements or omissions. The government replies that it may not be appropriate to apply *Franks* to an arrest warrant affidavit but does not cite any cases for that proposition. The Second Circuit considered the issue soon after the *Franks* decision but declined to decide it. *United States v. Broward*, 594 F.2d 345, 350 (2nd Cir.), *cert.*

*den.*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). Other circuits have explicitly applied *Franks* to affidavits made in support of arrest warrants. *See, e.g., United States v. Martin*, 615 F.2d 318, 328 (5th Cir.1980). Since both exercises turn upon the determination of probable cause by a magistrate, I will apply *Franks* to analyze an affidavit for an arrest warrant.

Defendant's counsel argues that omissions from Agent Congregane's affidavit in the Complaint means that the arrest warrant is invalid and statements resulting from the arrest must be suppressed. As an initial matter, challenged statements from an affidavit in support of a warrant must be material. *See Franks*, 438 U.S. at 163, 98 S.Ct. at 2680. The *Franks* rationale has also been applied to omissions. *United States v. Vasquez*, 605 F.2d 1269, 1282 (2nd Cir.), *cert. den.*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979). The Second Circuit has stated, "[F]acts omitted from a warrant affidavit are not material unless they cast doubt on the existence of probable cause.... The omitted information and the information in the affidavit must be considered as a whole in determining if probable cause continues to exist." *United States v. Marin–Buitrago*, 734 F.2d 889, 895 (2nd Cir.1984) (citations omitted). Omissions are not subject to the same high level of scrutiny as misstatements. As the Fourth Circuit has written: "the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory." *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir.1990). The determination of the continued existence of probable cause is governed by the "totality of circumstances" rule of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

The Second Circuit has outlined a two-part test for obtaining a *Franks* hearing. The defendant must show (1) that the affidavit had material false statements or omissions which were made intentionally,

knowingly or with reckless disregard for the truth and (2) that without the statements and omissions the magistrate could not have found probable cause. *United States v. Levasseur*, 816 F.2d 37 (2nd Cir. 1987); *United States v. Ferguson*, 758 F.2d 843, 848 (2nd Cir.), *cert. den.*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 102 (1985). The defendant's contention that information was omitted from Agent Congregane's affidavit must be examined to see if material information was omitted deliberately or with reckless disregard for the truth and if with the inclusion of the omissions probable cause still existed.

While defendant has not shown that Agent Congregane made deliberate omissions from his affidavit, the omissions themselves would have had no effect on the determination of probable cause. Whether Hendrix may have given a different story before implicating the defendant or have used drugs in the past does not mean that his implication of the defendant is unreliable. The government rightly points out that the testimony of a co-participant has special weight in allowing federal agents to find probable cause to arrest. As the Second Circuit has put it: "a participant in the criminal activity at issue 'need *not* be shown to have been previously reliable before the authorities may rely on his statements.' *United States v. Rueda*, 549 F.2d 865, 869 (2nd Cir.1977) (emphasis in original)." *United States v. Ceballos*, 812 F.2d 42, 50 (2nd Cir.1987); *United States v. Gaviria*, 805 F.2d 1108, 1115 (2nd Cir. 1986), *cert. den.*, 481 U.S. 1031, 107 S.Ct. 1960, 95 L.Ed.2d 531 (1987). While *Ceballos* was not a warrant case, the same principle applies where agents are seeking a warrant.

Hendrix's previous drug addiction is not alleged to make him unable to identify criminal associates but rather goes to credibility at trial. The defendant has only made a vague allegation of drug use by the informant Hendrix. Similarly, any change that occurred in Hendrix's story during his interrogation is not material. This case does not present a sustained period where Hendrix gave a contradictory story and then it was changed right before Agent Congregane appeared before the magistrate. Rather, the defendant has only alleged that Hendrix initially claimed sole responsibility and then changed his story. The omissions are not so great as to impact the determination of probable cause by the magistrate.

### III.

■ Defendant's counsel contends that the defendant's Sixth Amendment rights were violated by the defendant's arrest immediately following his sentencing on state charges. Counsel argues that the defendant's Sixth Amendment rights had attached in his state case and hence he could not be arrested by federal agents outside the presence of his appointed counsel in the state proceeding. Counsel relies on *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), to argue that law enforcement agents cannot interfere with a defendant's right to counsel in one pending case, even if investigating separate charges. In *Moulton*, the Maine police introduced an undercover informant into a conference to plan pretrial strategy. *Id.* at 165–66, 106 S.Ct. at 481–82. That is not the case here. The federal agents did not interfere with the defendant's right to consult with his court appointed counsel. They simply waited until the completion of his state case before arresting him on federal charges. The defendant was free at that time to request the opportunity to consult with his counsel and instead signed a waiver of that right.

The previous assistance of counsel in his state case makes the defendant's waiver of counsel in his federal case all the more effective. While the defendant's Sixth Amendment right to counsel in his federal case may have attached when he was indicted on his federal charges, he did not assert that right. The Supreme Court has upheld knowing waivers of the right to counsel in just such situations. *Patterson v. Illinois*, 487 U.S. 285, 290–291, 108 S.Ct. 2389, 2393–94, 101 L.Ed.2d 261 (1988). Soon after leaving his state sentencing where he was with his attorney, the defendant waived the right to have an attorney

present during questioning. Defendant's counsel has not alleged any defect in that waiver and his recent representation reaffirms that defendant was aware of his right to counsel but chose not to exercise that right. *See United States v. Scarpa,* 897 F.2d 63, 68 (2nd Cir.1990).

## IV.

■■■ Defendant contends that his presentation before the magistrate was accompanied by such delay that his signed confession should be suppressed. In determining the admissibility of confessions obtained during the period before presentment to the magistrate, this Court is governed by 18 U.S.C. § 3501(c), which provides:

> In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within *six hours immediately following his arrest or detention: Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering *the means of transportation and the distance to be traveled* to the nearest available such magistrate or other officer. 18 U.S.C. § 3501(c) (emphasis added).

The statute's plain language makes the six-hour post-arrest period crucial. The arresting officer is under a general duty to bring the arrested person before a magistrate "without unnecessary delay." Fed.R. Crim.P. 5(a). Section 3501(c) particularizes that duty. A post-arrest, pre-presentment confession within six hours "shall not be inadmissible *solely* because of delay" (emphasis added); other circumstances are for the jury. By negative inference, a pre-presentment confession obtained more than six hours after arrest is inadmissible "solely because of delay" *unless* the government shows the delay was "reasonable considering the means of transportation and the distance to be traveled to the *nearest available* such magistrate or other officer." (emphasis added). If one applies the maxim *expressio unius est exclusio alterius,* only the two expressed mitigating circumstances—means of transportation and distance to be traveled—may be considered by the trial judge.

A delay of more than six hours has been held to be unreasonable when the sole reason for the delay was further questioning of the person under detention. In *United States v. Perez,* 733 F.2d 1026 (2nd Cir. 1984), the Second Circuit examined the wording and history of § 3501(c) and held that: "reasonably construing the plain language of the statute in light of its legislative history leads ineluctably to the conclusion that discretion is vested in a district court judge to exclude a confession upon his finding that a delay of more than six hours was not reasonable." *Id.* at 1035. Given the specific statutory scheme, the Court of Appeals' conclusion seems not only inevitable but understated.

In any event, the delay in bringing Rivera before the magistrate was not reasonable. Assuming that the defendant was arrested too late on April 26, 1990 to be brought before the magistrate, he could have been brought to the courthouse for arraignment the morning of April 27, 1990. In *United States v. Yong Bing–Gong,* 594 F.Supp. 248 (N.D.N.Y.1984), *aff'd* 788 F.2d 4 (2nd Cir.), *cert. den.,* 479 U.S. 818, 107 S.Ct. 78, 93 L.Ed.2d 33 (1986), the District Court for the Northern District of New York suppressed prearraignment statements where the defendant was not arraigned until 7:00 p.m. on the day after he

was arrested. As Judge Miner wrote: "First, although defendant was arrested late in the evening when, presumably, no magistrate was available, the next morning, Friday, was a normal business day and there was no conceivable reason why defendant could not have been presented then." *Id.* at 254. The case at bar presents much the same situation.

The defendant was picked up from the M.C.C. at approximately 10:00 a.m. and was taken to 26 Federal Plaza for "routine processing" which generally takes one hour and in this case took 65 minutes. At this point, approximately 11:15 a.m., the defendant could have been taken to the United States Courthouse for arraignment before a magistrate. Given the local geography, Rivera was transported right past the courthouse door on his way from the M.C.C. to 26 Federal Plaza. Instead, the defendant was read his *Miranda* rights and questioned by Agent Galligan and Detective Bostic. This interview resembles the troublesome Southern District United States Attorney's policy of prearraignment interviews, discussed in *Perez, United States v. Foley*, 735 F.2d 45 (2nd Cir.1984), *cert. den.*, 469 U.S. 1161, 105 S.Ct. 915, 83 L.Ed.2d 928 (1985) and *United States v. Rondon*, 614 F.Supp. 667 (S.D.N.Y.1985). During his prearraignment interview the defendant signed a written confession admitting his complicity in several robberies.

The defendant's arrest triggered the statutory time period to obtain a confession and present a defendant for arraignment. The statute does not say that an arrested individual must be arraigned in six hours but it subjects any delay of over six hours to a reasonableness test which depends upon particular circumstances. Here, the defendant was not arrested until 7:30 p.m. on April 26, 1990. Under the plain words of the statute the defendant was then "under arrest or other detention" and the government then had six hours in which to obtain a confession that would not be inadmissible solely because of delay in presenting the defendant before a magistrate.

The prearraignment delay in this case of 21 hours was unreasonable. The prearraignment processing at 26 Federal Plaza is evidently standard procedure and would have been a reasonable delay before arraignment. A prearraignment interview commenced 16 hours after the defendant's arrest cannot be considered reasonable. Such an interview is not one of the reasons Congress provided for reasonable delay in the proviso of § 3501(c). Congress enumerated "the means of transportation and the distance to be traveled" to the nearest magistrate as the factors to mitigate delays of over six hours in presentment. *See* § 3501(c), *supra.* The time that the defendant spent at the M.C.C. because no magistrate was available when he was arrested would have been reasonable if thereafter the defendant had been promptly presented to a magistrate. *See United States v. Rubio*, 709 F.2d 146, 154 (2nd Cir.1983).[1] Once the F.B.I. processing was complete, the agents should have taken the defendant to be arraigned. Instead they interviewed the defendant for at least 70 minutes and at the conclusion obtained an inculpatory statement. I cannot find that such an interview, begun so long after defendant's arrest, was reasonable. The defendant had a right to a prompt arraignment and the agents disregarded that right.

The government attempts to excuse the delay in arraignment by contending that the defendant's statement was completely voluntary and hence the delay in the arraignment was not a factor in the defendant's confession. Title 18 U.S.C. § 3501(d) states that the provisions of § 3501 shall not bar any statements "given voluntarily by any person to any other person without interrogation by anyone". *See United States v. Colon*, 835 F.2d 27 (2nd Cir.1987), *cert. den.* 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988). The affidavit of Agent Galligan states that she read the defendant his rights and he waived them. She states that her interview with the defendant was quite short because of the defendant's "cooperative attitude." Galli-

---

**1.** I do not address Agent Galligan's recollection that in fact the defendant confessed while on his way from the M.C.C. to 26 Federal Plaza. That recollection is not at issue on this motion.

gan Aff. ¶¶ 8, 10. However, it is clear that this prearraignment interview was an interrogation. Earlier in her affidavit Agent Galligan reports certain spontaneous inculpatory statements that the defendant made as he was transferred from the M.C.C. to 26 Federal Plaza but her affidavit makes it clear that what occurred at 26 Federal Plaza was a formal interview. If the defendant had blurted out a confession before arraignment, it would of course be admissible. But a setting where the defendant was read his rights and then interviewed does not qualify as an absence of interrogation so as to come within the provisions of § 3501(d).

## ORDER

Since I have determined that the prearraignment delay in this case was unreasonable, the defendant's motion to suppress an inculpatory written statement he signed on April 27, 1990 is granted. The signed confession made on that date will not be received in evidence at trial.

Defendant also moved for dismissal of Counts Three and Four of the indictment for lack of venue and the government did not oppose such dismissal. Consequently Counts Three and Four, which relate to criminal activity which the defendant is charged with having committed outside the Southern District of New York are dismissed without prejudice.

It is SO ORDERED.